IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
MONTGOMERY DIVISION

| | |
|---|---|
| LINDA LAUBE, et al., | ) |
| Plaintiffs, | ) |
| v. | ) CIVIL ACTION |
| DONAL CAMPBELL, et al., | ) No. CV-02-T-957-N |
| Defendants | ) CLASS ACTION |

## CONDITIONS SETTLEMENT AGREEMENT

### I. INTRODUCTION

1.  **Plaintiffs.** Plaintiffs in this class action are all women who are now or will in the future be incarcerated in an Alabama Department of Corrections facility. This action was filed seeking declaratory and injunctive relief for violations of their Eighth and Fourteenth Amendment rights.

2.  **Defendants.** Defendants in this case are Donal Campbell, Commissioner of the Alabama Department of Corrections ("ADOC"); Bob Riley, Governor of Alabama; Gladys Deese, warden of Julia Tutwiler Prison for Women; and Mary Carter, warden of Birmingham Work Release. All Defendants are sued in their official capacity. The Plaintiff class and all Defendants are parties to this Final Settlement Agreement. The term "Defendants" refers to all these Defendants and their successors, agents, and assigns.

3.  **Scope.** This Conditions Settlement Agreement is submitted and entered into as a settlement of claims for declaratory and injunctive relief as set forth in Plaintiffs' Second Amended Complaint, filed on December 18, 2002, as well as a settlement of all attorneys' fees and costs. The parties hereby agree to the following terms.

### II. LIVING CONDITIONS.

4.  **Population flow.** The ADOC shall provide access to and cooperate with representatives from community corrections programs to identify women who are qualified for community corrections placements. Caseload officers shall receive up-dated information about community corrections, including identification of women appropriate for supervised release programs. Classification reviews for all women (including those at Birmingham Work Release) shall be conducted at least every 6 months. Plaintiffs' counsel, paralegals, consultants, and experts shall be permitted on a semi-annual basis to review institutional records and other documents relevant

to classification for the purpose of identifying mistakes and working cooperatively with the ADOC and its representatives to correct such mistakes.

5.  **Heat**. Dormitories housing special populations (mental health, aged and infirm, or HIV-positive) shall be kept at ambient temperatures between 65 and 85 degrees Fahrenheit. The ADOC shall purchase and maintain five additional commercial ice machines (or enough ice machines to increase current ice production by 50%) suitable for use in correctional facilities, and shall make ice freely available to women at Tutwiler Prison at all times. Women shall have the option of wearing shorts starting at 3:30 p.m. Additional showers shall be permitted when temperatures reach 85 degrees Fahrenheit or higher in the dormitories. The ADOC shall conduct temperature readings twice daily in each living unit, install thermometers in each dormitory, and calibrate temperature guns as necessary. Neither fans nor air conditioning shall be turned off for punitive purposes.

6.  **Shade**. The ADOC shall provide shaded outdoor enclosures attached to each dormitory at the main Tutwiler facility. The ADOC need not provide such enclosures to Dorm 5 (formerly the chapel) and Dorm 10 (the freestanding structure at the north side of the prison) so long as women housed in those dorms are provided regular programming that incorporates outdoor exercise time on weekdays.

7.  **Outdoor exercise**. For every woman housed in the dormitories, defendants shall provide an opportunity for outdoor recreation in the large recreation yard at least one hour per day, five days per week. Defendants shall make best efforts to maximize the amount of time permitted outdoors during the weekends. For women housed in the mental health unit, receiving unit, or HIV+ unit, the ADOC may conduct exercise time in the smaller yards attached to those units.

8.  **Segregation exercise**. For women in segregation, Defendants shall provide an opportunity for outdoor recreation at least 45 minutes a day, seven days a week.

9.  **Visitation**. All women shall be allowed at least two visits with family and loved ones each month.

10. **Physical plant**. The ADOC shall alter the windows in the Tutwiler facility so that the top row of windows that can be safely opened to at least 45 degrees, and the bottom row of windows can be fully opened for air circulation.

11. **Facility maintenance**. The ADOC shall develop a preventative maintenance schedule and policy for upkeep of critical facility functions, including but not limited to locks, plumbing, electrical systems, roof structures, drop ceilings, windows, floors, HVAC systems and window air conditioning units used in living spaces, laundry systems, dishwashing equipment, cooking equipment, and refrigeration units. The maintenance schedule shall provide for review and upkeep of all covered areas at least quarterly. A log, containing updated reports of the status of all facility maintenance, will be kept on site. Heating, air conditioning units, and ice machines

that malfunction shall be repaired promptly. When on-site maintenance staff or ADOC engineering staff are not able to make the repair within 24 hours, the ADOC shall secure a qualified person to make the repair. Ice machines that malfunction shall be repaired within 7 days, unless a necessary replacement part is not available during that time. The ADOC shall secure sufficient ice from other machines or outside sources when one or more ice machines are broken.

12.   **Toilets and showers.** The ADOC shall continue to make daily checks Monday through Friday of each toilet and shower area for maintenance needs. Such checks, the problems noted during such checks, and the steps taken to remedy those problems shall be documented.

13.   **Environmental safety.** The ADOC shall thoroughly and safely disinfect and clean each living area at least once a month, and shall ensure that each living area receives monthly pest control services for spiders, roaches, and other vermin. Women shall be permitted sufficient, supervised access to cleaning supplies and equipment, including a disinfectant such as bleach, to keep all living and bathing areas clean. Bathroom and bathing areas, as well as living areas, shall be regularly cleaned to control mold and staphylococcus in a medically sound manner.

14.   **Laundry.** For every 250 women for whom the Tutwiler laundry facility is doing laundry, there shall be available and functional at least one 125 pound capacity washer, one 125 pound capacity dryer, and one presser.

15.   **Ventilation.** The ADOC shall install and maintain an exhaust fan in each of Dormitories 1-8 that are not temperature controlled. The ADOC shall install 2 exhaust fans in Dormitory 9. In the segregation unit, at least one wall-mounted rotating fan shall be installed and maintained for every 3 cells.

16.   **Recreational opportunities.** Recreational equipment (such as softball, volleyball, and basketball equipment) shall be available during the time that the recreation yard is open. Women shall be permitted and encouraged to organize exercise classes, subject to reasonable limitation on the number and frequency of such classes according to the availability of correctional officers to supervise the women participating in such classes. Notice of the availability of exercise equipment and exercise classes shall be included in the daily institutional newsletter at least once a month and at orientation. Defendants shall cooperate with community, civic and nonprofit groups, and dormitory representatives to continually improve and increase recreational activities for women.

17.   **Drug treatment.** The ADOC shall provide adequate and appropriate drug treatment programs to accommodate all women who are sentenced to complete such programs. Where the completion of a drug treatment program is a condition of release, including in split sentences, and the prisoner can be released upon completion of a drug treatment program, such a woman shall be placed in the next available drug treatment program.

18. **Programming**. The ADOC shall provide adequate and appropriate vocational, educational, industrial, therapeutic, or other appropriate programming to accommodate at least 60% of the total female inmate population. The ADOC shall continue to cooperate with community, civic and nonprofit groups to continually improve and increase programming opportunities to women.

### III. SAFETY AND SECURITY.

19. **Staffing**. Security officers shall be on post in sufficient numbers so that each officer is supervising no more than 50 women each in the dormitories. The ADOC shall document the overall vacancy rate among staff positions authorized for working directly with inmates. This vacancy rate shall not exceed 10 percent for any 18-month period. Security officers with duties that include direct inmate supervision shall not work more than 16 hours at a stretch, and must have at least 8 hours off between shifts.

20. **Lines of sight**. The ADOC shall make best efforts to ensure that there are no blocked lines of sight from any security post throughout the area that post is intended to secure. Doors where inmates regularly enter or exit a room shall not obstruct the line of sight. Doors may be made entirely or partially of grilled bars, or shall have large windows at eye level to permit continuous lines of sight between areas separated by the door.

21. **Drug testing**. The ADOC shall develop a drug testing policy containing comprehensive safeguards for drug testing accuracy at Birmingham Work Release. Plaintiffs' counsel shall be permitted to review and comment on the policy prior to its final adoption. At a minimum, the policy shall correct the current failure to consider medication usage in drug testing and shall ensure there is a mechanism for identifying and investigating unusual results.

22. **Punishment**. The ADOC shall not punish women in their care through deprivation of minimally nutritious meals, or forcing them to remain in the same position for any pre-determined period of time. Women at Birmingham Work Release shall not be punished when they are unable to do their jobs due to physical limitations or sexual harassment on the jobsite. Women at Birmingham Work Release shall not be denied visitation for dorm failures as a matter of course.

23. **Single cells**. The ADOC shall maintain or have available sufficient segregation cells to house at least 4% of the total female population.

24. **Classification**. The ADOC shall maintain a classification system that specifies at least three levels of custodial control and inmates should be assigned to the least restrictive custody level necessary. The ADOC shall maintain sufficient bedspace to implement such a system. Any delays or revisions of housing placements that are caused at least in part by lack of immediately available bedspace shall be contemporaneously documented. The ADOC shall summarize and analyze such data and remedy any space deficiencies identified through such an internal audit.

The ADOC shall develop and implement a written policy to provide for identification of special needs women, including but not limited to women who are emotionally disturbed or suspected of being mentally ill, the mentally retarded, and those who pose high risk or require protective custody. Such a policy shall include and encourage multiple avenues of identifying such special needs women, permitting security staff, other prisoners, medical and other non-custodial staff, and others to make appropriate referrals. The identification of special needs women shall not be limited to the moment of intake.

## IV. ENFORCEMENT AND DISMISSAL.

**25. Reporting.** Defendants shall provide to Plaintiffs' counsel monthly reports on average daily population and progress in construction of a residential treatment unit for the first 2 years of this Agreement. If the population at the main Tutwiler building remains at 700 or below, and the annex at 250 or below, Defendants may thereafter make quarterly reports. Upon inquiry, plainitffs' counsel shall be provided the population count on any day.

**26. Monitoring.** Plaintiffs' counsel shall have reasonable access to prison records and the prison facility, including escorted walk-through visits of the prison facilities on a quarterly basis during the first year following the entry of this Agreement, and twice a year thereafter. Paralegals working directly with Plaintiffs' counsel shall have reasonable access to inmates and will be accompanied by an attorney during any walk-through of the prison. Plaintiffs may bring experts at their own expense on such walk-through visits.

**27. Notice.** The Commissioner of the ADOC and his representatives shall provide a copy of or explain the terms of this Agreement to all of their agents, representatives, and employees in any way connected with the custody of class members, in order to ensure their understanding of the scope and substance of this agreement. Women entering Tutwiler shall be provided an information sheet, mutually approved by all parties, informing them of the existence and material terms of this Agreement. In addition, at least 3 copies of this entire Agreement shall be maintained in the Tutwiler library.

**28. Enforcement.** If the ADOC, its agents or contractors, fail to comply with the terms and conditions of this Agreement, Plaintiffs' counsel may apply to the Court for a finding of contempt or other appropriate relief. Prior to approaching the Court for such relief, Plaintiffs' counsel will bring, in writing, any deficiencies to the attention of the Defendants and will make reasonable attempts to resolve the issues informally. Issues that cannot be resolved informally between the parties shall be brought to the attention of the Magistrate Judge, who will attempt to mediate a resolution, before Plaintiffs' counsel will move the Court for an Order for Defendants to show cause why they should not be held in contempt.

**29. PLRA findings.** The parties agree, and the Court hereby finds at this time, and after an independent review, that the prospective relief set forth in this Agreement is narrowly drawn, extends no further than necessary to correct the violations of federal rights set forth in paragraphs

69-100 and 142-171 in Plaintiffs' Second Amended Complaint, and is the least intrusive means necessary to correct these violations. The parties agree, and the Court hereby finds after an independent review, that this Agreement will not have an adverse impact on public safety or the operation of the criminal justice system. Acccordingly, the parties agree, and the Court hereby finds, that this Agreement complies in all respects with the provisions of 18 U.S.C. § 3626(a). This Agreement is not intended to operate as a population cap or a prisoner release order. This Agreement is not intended to have any preclusive effect except as between the parties in this action. Should the issue of the preclusive effect of this Agreement be raised in any proceeding other than this action, the parties agree to certify that this Agreement was intended to have no such preclusive effect. This Agreement does not resolve, adjudicate, or bar the damages claims of any former, present, or future class members.

30. **Narrowly drawn relief.** For the purpose of ensuring that ongoing relief remains a narrowly drawn remedy, paragraphs 14, 19, and 23 of this Agreement shall be suspended when the population at the main Tutwiler facility is maintained at 700 or below and the population at the Tutwiler annex is maintained at less than 250 for 60 or more continuous days. Paragraphs 14, 19, and 23 shall not take effect until November 1, 2004, or until such time as the population at the main Tutwiler facility is maintained at 700 or below and the population at the Tutwiler annex is maintained at less than 250 for 60 or more continuous days. So long as the population at the main Tutwiler facility remains at 700 or below and the population at the Tutwiler annex is maintained at less than 250, paragraphs 14, 19, and 23 shall remain suspended and without force or effect. Should the population at the main Tutilwer facility thereafter increase to more than 700 or the population at the Tutwiler annex increase to 250 or more for 15 or more days in any 30 day period, all paragraphs of this Agreement shall return to full force and effect.

31. **Attorneys fees.** In the event the parties are unable to hereafter resolve by agreement issues relating to Plaintiffs' claim for attorneys' fees, Plaintiffs may petition the Court within thirty days of the date on which the Court enters its Order granting the parties' *Joint Motion to Adopt Settlement Agreement*, for a resolution thereof.

32. **Class members.** Parties stipulate to the certification of the class of all women who are now or will in the future be incarcerated in an Alabama Department of Corrections facility.

33. **Modification.** Any party may seek modification of any part of this Agreement for good cause shown. Construction of a new prison for women constitutes good cause for modification. The ADOC shall continue to implement in a timely manner all parts of this Agreement pending decision of the Court on any motion for modification.

34. **Term of Agreement.** This agreement shall be in effect for four years from the date the Agreement is approved by the Court. Nothing in this Agreement is intended to preclude Defendants from moving to terminate the Order in the manner permitted by the Prison Litigation Reform Act.

6

Lisa Kung, GA Bar No. 430302
Tamara Serwer, GA Bar No. 617053
Stephen Bright, GA Bar No. 082075
SOUTHERN CENTER
FOR HUMAN RIGHTS
83 Poplar Street, N.W.
Atlanta, Georgia 30303-2122
Telephone: (404) 688-1202
Facsimile: (404) 688-9440

John A. Russell, III, Esq.
Bar No. ASB-0933-U83J
202 Broad Street
Aliceville, Alabama 35442
Telephone: (205) 373-8714
Facsimile: (205) 373-8894

Gretchen Rohr, GA Bar No. 613518
Holland & Knight LLP
1201 West Peachtree St. NE, Suite 2000
Atlanta, GA 30309
Telephone: (404) 898-8177
Facsimile: (404) 881-8470

George E. Schulz, Jr., FL Bar No.169507
Holland & Knight LLP
50 N. Laura Street, Suite 3900
Jacksonville, FL 32202
Telephone: (904) 798-5462
Facsimile: (904) 358-1872

*Attorneys for Plaintiffs*

William F. Addison,
AL Bar No. ADD002
Alabama Department of Corrections
Legal Division
101 South Union Street
Montgomery, Alabama 36130
Telephone: (334) 353-3890
Facsimile: (334) 353-3891

Ellen Leonard, AL Bar No. LEO008
Charles Campbell,
Bar No. ASB-6423-C52C
Office of the Attorney General
State of Alabama
11 South Union Street
Montgomery, Alabama 36130
Telephone: (334) 353-8699
Facsimile: (334) 242-2433

*Attorneys for Defendants*

Bob Riley
Governor, State of Alabama

Troy King
Attorney General, State of Alabama

Donal Campbell
Commissioner, Dept. of Corrections